WATSON and HARBOTTLE *against* RENWICK.

To entitle the plaintiff, before hearing, or publication, or issue joined, to call for the inspection of papers, &c. it is not sufficient, that there has been a general reference to them in the answer. They must be *described*, with reasonable certainty, in the answer, or in the *schedule* annexed to it, so as to be considered, by the reference, as *incorporated in the answer*, which must admit them to be in the *possession or power* of the defendant: And it must appear that the plaintiff has an *interest* in the production of the papers, books, or instruments sought after.

PETITION of the plaintiffs, stating that they, as assignees of *Benjamin Gray*, of *Manchester*, in *England*, a bankrupt, filed their bill against the defendant, as administratrix of *William Renwick*, late of the city of *New-York*, deceased, for discovery and account of an unsettled copartnership, and the dealings between *B. G.* and *W. R.* as partners in trade. That the bill required the defendant to set forth all the books, papers, accounts, &c. relative to the matters of the bill, and such as have been burnt, or destroyed by her. That the defendant, in her answer, has not set forth such a list or schedule of the books, &c. though she, in her answer, makes frequent reference to the books, accounts, and papers of *W. R.*, deceased; and alleges, that certain accounts and papers of *W. R.* were sent to *England* in 1815, and that many of them were destroyed by fire in 1817, though the answer does not distinguish which were sent to *England*, which were destroyed, and which are still in her possession. That no replication had been filed. The plaintiffs *prayed* for an order, that the defendant deposit, under oath, with an officer of this Court, all the books, papers, letters, accounts, memoranda, vouchers, and writings, as called for by the bill, as far as the same are in the possession or power of

*May* 10th.

WATSON
v.
RENWICK.

the defendant; and that the plaintiffs may cross-examine her touching the same, and may have leave to examine, take copies, and make extracts from the same.

*Wells*, for the plaintiffs, in support of the petition.

*Henry*, contra.

The bill, filed *February* 2d, 1819, and the answer, filed *September* 13th, 1819, were referred to by the counsel. Such parts of them as were material on this motion, are noticed by the Court.

THE CHANCELLOR. This is an application for a very sweeping order, touching the production of books and papers, referred or alluded to in the defendant's answer.

The bill is for discovery and account, and the prayer in it is, that the defendant, who is sued as administratrix of her late husband, *William Renwick*, deceased, may set forth " a list or schedule of all such books, papers, letters, accounts, memoranda, vouchers, and writings, in her custody, possession, or power, relating to the matters set forth in the bill, and a like list of all such of them as have been burnt or destroyed by her," &c. The petition states, that she has not by her answer set forth such list or schedule, but has neglected so to do, although her answer makes frequent reference to the books, accounts, and papers of *R.*, and of *R. & G.*; and alleges, that certain accounts and other papers belonging to *R.* were sent to *England*, and others of them were destroyed by fire in 1817. The motion is, that she be ordered to deposit, under oath, for the inspection of the plaintiffs, " all the said books, papers, letters, accounts, memoranda, vouchers, and writings, as called for by the bill, so far as the same are in her possession or power, or under her control."

The answer has been in for some months, and was not excepted to. If it had not met sufficiently the inquiries in the bill, the plaintiff should have taken exceptions. It must, upon this motion, be taken to be a good and sufficient answer; and the question, then, is, whether the answer has laid a proper ground for the present motion. The answer does, indeed, as stated in the petition, frequently, but in a very general manner, and without particular specification, refer to the books and papers relating to the firm of *R. & G.*, and alleges certain facts *as appearing* from the said books and accounts. It speaks, in one or two places, of books, papers, and writings of *R.*, *in her possession* ; and, in another place, she denies that it appears by the said books of the former firm of *R. & G.*, that either of the two ships therein mentioned, were purchased with joint funds or on joint account ; " but for greater certainty, she refers to the books of account of the said partnership, in case the same shall be ordered to be inspected by the plaintiffs." The answer has not, however, laid a sufficient foundation for the motion, according to what is now understood to be the settled doctrine and practice in Chancery. To entitle the plaintiff, before hearing, or publication, or issue joined, to call for the inspection of papers, it is not sufficient, that there has been a general reference to them in the answer. They must be *described* with reasonable certainty, in the answer, or in the schedule annexed to it, so as to be considered, by the reference, as *in*corporated in the answer, and they must be admitted by the answer to be in the *defendant's possession or power ;* and it must also appear that the plaintiff has *an interest* in the production of the papers, or books, or instruments sought after. A *voluntary offer* of the defendant to produce a deed, may dispense with some of those safeguards which the practice gives to the defendant ; but without such an offer, I apprehend the rule to be, that these circumstances must appear by the answer to entitle the plaintiff, in ordinary cases, to the effect of his motion. There may, indeed, be special cases,

(but of which I am not now speaking,) in which it would be deemed necessary, in the exercise of the discretion of the Court, to require the production of papers upon easier terms; but there is nothing, in the present instance, that entitles the plaintiffs to any relaxation of the rule.

It will be useful to look into the cases, and to note the history of the practice on this point.

In *Herbert* v. *Dean and Chapter of Westminster*, (1 *P. Wms.* 773.) Lord *Macclesfield* granted an order, that the defendants in a cross cause, should produce the vestry books before a Master; and he allowed the motion, on the ground, that the defendants had, in their answer, referred to them, " for fear of a mistake, and by that means had made them *part of their answer;* and for that reason, the Court ought to let the other party see them; otherwise, there would be no relying upon the answer of those who are thus guarding themselves by references, for fear of a mistake, and to avoid exceptions to their answer."

Here it is to be observed, that the books sought for, were considered as incorporated, by means of the reference, into the answer, as part of it.

So, in *Bettison* v. *Farringdon*, (3 *P. Wms.* 363.) on a bill for discovery of title, the answer showed, that a certain lease and release were executed, referring to the deeds in his custody. Lord *Talbot* confirmed an order on the defendant for the production of the deeds, and observed, that " at the hearing, it was admitted, the Court would make such an order, and that the defendant, by referring to the deeds in his answer, *had made them part thereof.*"

This decision was placed upon the same ground as the former; but the learned editor, Mr. *Coxe*, adds a *quære*, whether the bare referring to a deed, without setting it forth *in hæc verba*, will make it part of an answer. Lord *Rosslyn* (4 *Ves.* 71.) thought the expression in the case, " at the hearing," must have meant at the trial at law, for there is no hearing upon a bill of discovery; and Lord *Eldon*

said, that subsequent cases appeared to question the doctrine of this case on both its points. It had, also, been admitted, in a case prior to this, (*Hodson* v. *Earl of Warrington*, 3 *P. Wms.* 35.) that a deed was not part of a deposition, unless mentioned therein *in hæc verba*, and that it was not sufficient to refer to it in the deposition.

In *Gardiner* v. *Mason*, (4 *Bro.* 479.) Lord *Rosslyn* ordered that a paper, *specifically referred to* in the answer, and admitted to be in the defendant's custody, be produced for the plaintiff's inspection ; and in *Shaftsbury* v. *Arrowsmith*, (4 *Ves.* 66.) he made a like order, that the defendant give inspection of certain deeds which he had *set out in the schedule* to his answer.

The cases of *Smith* v. *Duke of Northumberland*, (1 *Cox's Cases*, 363.) and of *Burton* v. *Neville*, (2 *Cox's Cases*, 242.) admit that the plaintiff must show, or make it appear, that he has an interest in the papers called for, to entitle him to the production of them.

The reference, in the case before me, to certain books of accounts, *when produced*, is quite analogous to the case of *Darwin* v. *Clarke*, (8 *Ves.* 158.) where an answer admitted such a deed was executed, craving leave to refer it to when produced. But Lord *Eldon* said, that such an answer would not do, as there was no admission that it was in the possession or power of the defendant.

In *Atkyns* v. *Wright*, (14 *Ves.* 211.) Lord *Eldon* observed, that the practice formerly was, that where the answer did not describe, either in the body of it, or by schedule, which is part of the answer, the deed or paper sought to be produced, there was no order made for the production. In that case, as in this, the answer referred to divers deeds, accounts, and papers, and did not *describe* them. It admitted possession, but did not offer to produce a particular deed ; and an offer to produce a deed, *as the Court should direct*, or *if the Court should require it*, was held to be a

qualified, not a voluntary offer which ought to fix the defendant. It was only a submission to the discretion of the Court, and not a dispensation from the exercise of that discretion, as to the propriety of a rule for the production ; and for these reasons, the rule upon the defendant for the production of papers, was denied. The opinion of Lord *Eldon* upon the last point, seems to have been according to the case of *Stanhope* v. *Roberts*, (2 *Atk.* 213.) where a like offer only bound the party to produce the paper, *if the Court should think it necessary.* The Court, upon such a qualified offer, will enter fully into the merits of the application ; and an order upon the defendant to produce papers upon such an offer, was denied in the case of *The Attorney General* v. *The City of Coventry*, (*Bunb.* 290.)

The cases which I have referred to, sufficiently establish the general doctrine which I have declared, and do not afford any just ground for the motion in the present case.

The practice to be deduced from the preceding cases, is still more explicitly announced in two recent cases before Lord *Eldon*. In *Evans* v. *Richard*, (1 *Swanston*, 7.) there was a motion to produce letters and other documents referred to in the answer, and the Lord Chancellor observed, that the answer must contain an admission, that the documents in question were in the custody of the defendant, and that the rule for producing papers rested on the principle, that those papers were, by reference, incorporated in the answer, and became a part of it. And in the still later case of *The Princess of Wales* v. *Earl of Liverpool*, (1 *Swanston*, 114.) he said, it was necessary to the success of such a motion, that the defendant admitted in his answer, that the papers were in his custody or power, and which admission was not made by merely referring to the papers. Nor would the mere reference make documents *part of an answer*, for the purpose of production, though, perhaps, by amending the bill, and addressing further questions, the defendant might be compelled to make the documents part of

his answer for that purpose, and to make such an admission of possession as would authorize the order. The possession of the deed must be, by the answer, *fixed* in the defendant; and the reason is, that if the defendant should refuse, under the order, to produce the instrument, the Court could not apply process to enforce obedience, because no *constat* appears on the pleadings, that the instrument is in possession of the defendant, and that he has the power to obey. Additional, if not better reasons, are assigned by the Court of Exchequer, in *Erskine* v. *Bize*, (2 *Cox's Cases*, 226.) for the necessity of a direct admission in the answer of the fact of possession, or control of the paper, before a rule can be made to produce it.

There is wisdom in the cautious policy of the Courts on this head, and which is alluded to by Lord *Eldon*. A defendant, in his answer, accompanies the production of a deed with an explanation of all the circumstances, but a compulsory production under an order, deprives him of the security which the answer affords.

There are so many objections raised in the answer, in the present case, to the general equity of the bill, and in bar of any right or title whatever on the part of the plaintiffs, that I should not feel disposed to depart from the strict practice on this occasion, until these objections had been discussed and removed. The plaintiffs will be in season to demand an inspection of books and papers relating to the partnership transactions between *R.* and *G.*, when an account shall be directed to be taken. It cannot be reasonable to give them, in the first instance, an inspection of the books and documents in possession of the defendant, and belonging to her husband's estate, merely to see if they cannot discover in them some ground of action.

Motion denied, with costs.