## Case No. 12,158.

### RUSSELL v. McLELLAN et al.

[3 Woodb. & M. 157.] [1]

Circuit Court, D. Maine. May Term, 1847.

DEPOSITIONS—INTERROGATORIES—EFFECT OF AFFIDAVIT—SUBPŒNA DUCES TECUM.

1. A party may be allowed to take depositions before a master in chancery, after due notice, but without filing the usual interrogatories previously, if the evidence is to be derived from books, chiefly, not yet examined.

2. An order is proper in a bill in chancery, to produce books before a master, or in court, which may be in the possession or control of the respondent, and be referred to, though generally, in the answer.

3. If the respondent offer an affidavit that he has no such books in his possession, it will not prevent the order, but may be satisfactory to the master in his favor.

4. If it turn out to be so, the court will not, in ordinary cases, recommit them to the master for further interrogatories, but consider his decision final unless specific mistakes are pointed out.

5. But the court will give a subpœna duces tecum, for any witness to bring in the books who is supposed to have them, and will aid to ferret out and punish any evasion of its order.
[Cited in Johnson Steel Street-Rail Co. v. North Branch Steel Co., 48 Fed. 192.]

6. Rules of the court may be waived or modified for good reasons.

This was a bill in equity to compel a further account by [Isaac] McLellan, who had been joint owner with the complainant, [Joseph Russell,] either as co-partner or member of a corporation in a factory situated in Framingham, in this state, and had been agent for it many years.

After an answer to the bill, denying any partnership, and a replication, the plaintiff proposed to require the respondent to produce all his books and accounts connected with that agency; and moved for an order on him to that effect, and also for leave to take depositions before a master in chancery in respect to the books and accounts, on giving due notice, but without filing interrogatories, or cross-interrogatories, previously; yet allowing each party at the taking to put such questions as he might wish answered.

Ch. B. Goodrich, for complainant.
Mr. Osgood, for defendant.

The latter filed, likewise, an affidavit by the respondent, that he had in his possession, or under his control, no books nor ac-

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

counts as to that agency, except such as the defendant already had copies of.

WOODBURY, Circuit Justice. The motion so far as regards the leave asked to take testimony before a master in respect to the books and accounts of the parties, seems reasonable, considering the nature of the case. It asks a departure from the 47th rule of the court, which allows depositions to be taken if notice is given and written interrogatories and cross-interrogatories are first filed with the clerk. But a departure seems here useful to both parties, where so many unexpected questions may grow out of the examination of long accounts, as it will save the delay and expense in filing new interrogatories and taking additional depositions, several times, if books are produced and they are found to contain material facts. This is the only variance made from the rule, as a master can ordinarily take depositions when the usual interrogatories are filed, and this variance from one of our own rules we not only possess the right to allow beforehand, for good cause, but it is our duty, and in this instance is likely to save time and expense to both parties in eviscerating the real facts of the case. See cases in Allen v. Blunt [Case No. 217]. The proviso to the 30th section of the judiciary act of September, 1789 (1 Stat. 90), recognizes the power of this court to allow depositions to be taken "whenever it may be necessary, to prevent a failure or delay of justice." It is a mistake, as the counsel for the defendant seems to apprehend that this is trying any part of the case before a master, or referring it to him for that purpose, or for a report of any kind. That course this court has refused to permit in this cause on a previous motion, because the testimony in the cause is not yet put in. The present motion is merely for the purpose of taking some of that testimony, and the master is to act in this respect as an officer of the court to reduce the evidence to writing and administer the proper oaths, and not to report on any question of law or facts in the cause. In respect to the second branch of the motion, that the respondent be required to produce any books or accounts in his possession or control, relative to the matter in controversy, it seems well founded under the 15th section of the judiciary act of 1789 (1 Stat. 82). It is there authorized, even in trials at law, as fully as in chancery, and ample power given to enforce it, by nonsuit, or default of the disobeying party. Those powers exist fully in this court in cases in equity like this without the aid of statute. The United States courts have been very ready always to enforce this provision after reasonable notice, in actions at law. Hylton v. Brown [Case No. 6,981]; Bas v. Steele [Id. 1,088]; Dunham v. Riley [Id. 4,155]. In chancery in England, the motion is not an unusual one, and is substantially in the form adopted here in chancery cases. 1 Hoff. Prac. 306; 3 Daniell, Ch. Prac. 2038; 1 Smith, Ch. Prac. 661, 666; 2 Smith, Ch. Prac. 155; 6 Madd. 340; Wig. Disc. 119, 199. The rights of the respondent are well guarded, as the books must be in his possession or control, and must contain charges relative to the matter in controversy; or he is not required to produce them. Eager v. Wiswall, 2 Paige, 369. He has here put in an affidavit that he has no such books and no accounts of that character, except such as the complainant already has copies of. But this should be used rather as a reply to the order than a reply to this motion. If he makes such an affidavit in answer to the order after one is given and served upon him, and no exception is taken to the affidavit, he will, of course, be considered as exonerated from doing anything more under the order. And if the books wanted are in the hands and control of some partner of McLellan, or of the Framingham Factory Corporation, or some other person, the complainant must get access to them by a subpoena duces tecum to the true possessor of them. If the accounts as to these matters are mingled with others, the court will protect the latter from examination. 9 Sim. 261. The motion is then granted.

On the same day, the time for taking testimony having expired while this motion was pending, the court extended it sixty days longer, being a period less than what had elapsed since the original motion was filed in February last. At a subsequent day the commissioner reported that the defendant, in answer to the order, had filed an affidavit, denying that he had in his possession or control any books containing matter relative to the subject of the bill in this case. That thereupon the commissioner considered the respondent not amenable to any further proceeding as to the books before him; and the complainant not being ready to take any evidence before the commissioner, the order was reported back to the court. The complainant then moved—1st. That the report and order be recommitted to the commissioner, with instructions to allow interrogatories to be put to the defendant, explanatory of his affidavit. 2d. That if not doing this, the defendant be required by this court to answer such cross-interrogatories as to the subject of his affidavit as the complainant wished to propound.

These motions were resisted by the counsel for the defendant, and after being fully heard the court refused them for the following reasons:

The court did not apprehend that its power to let depositions be taken before a commissioner was doubtful in a case like this. It was not a case under the general provision of the act of 1789, when a witness was infirm, or bound to sea, or living over a hundred miles distant, &c., &c. Nor is it a case under the act of April 29th, 1802 [2 Stat. 156].

of taking depositions in equity, in conformity to the state mode of doing it in like cases. But, as remarked at the former hearing, it is taking them under the proviso to the act of 1789, in order to prevent delay, as is there expressly authorized. 1 Stat. 82; [Sergeant's Lessee v. Biddle] 4 Wheat. [17 U. S.] 508. And the mode of doing it departs from the 47th and 48th rules of this court, only in respect to the filing, previously, of interrogatories. All our rules are open to such departures, by leave of the court, on good cause shown, as all rules are established to facilitate and promote justice and not to embarrass or defeat it. Such good cause was shown here originally, and hence we do not refuse these motions, because entertaining a belief that the original order issued improperly, so far as regards the form of permitting depositions to be taken here under the special circumstances of this case.

Another reason urged against these motions, is, that it was not a proper case for compelling the production of books. But it seems to be forgotten that the bill averred and the answer admitted quite enough to render it probable the defendant had in his control books pertinent to the subject of the controversy. Long accounts had existed in respect to it. The defendant had enjoyed access to them, if not made them up. He had furnished copies of them on a previous inquiry. He and the complainant were mutually interested in them, either as partners or members of a corporation—one claiming it to be in the former capacity, and one in the latter. There seemed, then, to be no reason in equity, why the defendant should not be required to produce the books in which those accounts were kept, if he had the possession or control of them, and this as well before a master or commissioner as before this court itself. 2 Daniell, Ch. Prac. 1361; 4 Mylne & C., 263; 2 Paige, Ch. 432. The order was, therefore, made conditional, and passed, leaving him to be exonerated, of course, if he satisfied the commissioner that he had no control over any such books. He could be injured by no such order, and has satisfied the commissioner of his inability to produce any such books within his own custody.

The next inquiry then, is, whether a power exists in this court to recommit the case to the commissioner, in order that the defendant may be interrogated further as to the books, with a view to see whether his affidavit be not evasive or false. I entertain no doubt as to this power, or as to our own authority to let him be interrogated further here in respect to the subject matter. Hallett v. Hallett, 2 Paige, Ch. 432; Turn. & R. 195, note. But I do not feel entirely satisfied that this is a proper case for the exercise of such a power. To commit the cause again to the commissioner for such interrogatories, or to allow them here, after what has already taken place, and satisfied him, would be to cast some imputation on the correctness of his decision. No particular data are referred to, justifying such imputation. Both parties were heard before him, and both must acquiesce in his report, unless specific errors can be designated. The case is rem judicatam unless new facts are discovered or special mistakes made by him are assigned and supported. I can well conceive, that the general result reached by him might be correct in this particular case; while in others he or we ought, in the exercise of a sound discretion, to go further and allow detailed interrogatories, and even counter-affidavits to be filed, if desired. The defendant, in some cases, might be known not to be entitled to full credibility. The affidavit on the face of it might be equivocal. The circumstances of the case might render its contents presumptively evasive or incredible. Other modes of redress or of eliciting the truth might not be easily accessible. But none of these grounds are shown to exist here. On the contrary, if the books belonged to a corporation whose agent he has ceased to be (which seems probable, from 14 Pick 63), the new clerk or agent could be summoned into court, or before a commissioner, with a subpœna duces tecum, and access be thus had to all their contents. So, if the books are in other person's possession, and not the defendant's, that other person can be compelled to bring them in as a witness. So, if the affidavit be false or evasive, and the books have merely been put aside or handed over to others to avoid their production in this suit, proceedings can be had on this affidavit, for perjury, and the whole authority of this court and of the laws of the Union will cheerfully be lent to ferret out and punish, signally, such evasions and wickedness. The possession by an agent, or attorney, or partner, is possession by himself. 1 Mylne & C. 534; 4 Johns. Ch. 383; 11 Sim. 391; 7 Beav. 354; 2 Hare, 540; 3 Daniell, Ch. Prac. 2043.

Considering, therefore, that all these collateral modes of reaching like relief are open, and that the commissioner, after his positive oath they are not in his custody, (3 Daniell, Ch. Prac. 2049,) and after a full hearing of the parties, has decided the question in favor of the defendant, I do not think this a case of such strong and peculiar features as to require the allowance of either of the new motions made by the plaintiff. Much less is it one, when we advert to the fact that the books supposed to exist in this case are not so specifically pointed out in the bill as the old practice may at one time have required (Watson v. Renwick, 4 Johns. Ch. 381); and the defendant now consents to an amendment of the bill, putting there more specific interrogatories concerning them, like what are now proposed to the affidavit, and giving to the defendant an opportunity to reply by an amendment of his answer. This seems reasonable, and accords with the suggestion of there being another feasible mode of obviating the necessity for these motions. See, al-

so, Princess of Wales v. Earl of Liverpool, 1 Swanst. 114; 4 Johns. Ch. 386; 2 Cox, Ch. 226.