two objections of being illegal and contrary to equity, and were such a contract as a court of equity dealing with solvent parties should specifically execute, still this court, as a court of bankruptcy, would be unable to decree a specific performance. In its nature this court has little to do with the specific execution of contracts. It has to deal with bankrupts who have broken all contracts, and are unable to perform any of them. It is a court whose primary duty is the distribution of assets gathered from the wreck of the estates of bankrupts, who themselves have already exhausted them of every resource available for the execution of contracts. The policy of the law under which the court acts is to avoid preferences, and to divide the assets pro rata, share and share alike, among creditors. The business of the court in this case is to distribute assets under the terms of a law which, except in favor of liens, requires a pro rata distribution.

If the new deposits which have been spoken of had in fact been special deposits, duly earmarked and set aside and held as such, the bank would have been a simple bailee of them and would have been obliged to return them in kind. But it is precisely because they were not special deposits, were not duly earmarked and set aside and held in kind, that a return of them cannot be decreed to the new depositors. No principle has been more thoroughly settled than the one that deposits of money paid into a bank over the counter are not received by the bank as a bailee, the property in them remaining in the depositors; but that they become the property of the bank, which itself thereby becomes the debtor of the depositors.

This bank, therefore, having become the debtor of Mr. Beatty and of the new depositors, and having gone into bankruptcy, and the new deposits having been paid into it over the counter, no pains having been taken to separate them from other moneys or to preserve their identity, it follows that no lien was preserved at the time of the deposits, that no legal preference could therefore arise under the advertisement of 3d October, 1873, and that the petitioner stands in this court only on the footing of a general creditor. I will sign an order dismissing the petition with costs.

---

## Case No. 9,977.

### MUTUAL BUILDING FUND SOC. & DOLLAR SAV. BANK v. BOSSIEUX et al.

[1 Hughes, 386.] 1

District Court, E. D. Virginia. May, 1877.

RULES OF COURT—UPON WHOM BINDING—FOLLOWING STATE PRACTICE—DISCRETIONARY POWER OF FEDERAL COURTS.

1. A rule of practice prescribed by a court of justice, is for the government of suitors, counsel,

1 [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

and officers of the court in the conduct of causes and proceedings; and though it controls these persons, it does not control the discretion of the court itself so as to deprive it of power to secure the trial of causes on their merits, on proper showing.

2. An act of the legislature which takes away this discretion from a court, and deprives it of this power, is more than a rule of practice, and affects the common law right of suitors to sue in the courts.

3. Section 914 of the Revised Statutes of the United States, requiring the United States courts to conform their practice as near as may be to the practice obtaining in the courts of the several states in which they are held, contemplates only those rules of practice which are merely such, and does not contemplate those enactments of state legislation relating to practice in the courts which deprive them of power to control the application of rules of practice according to their discretion.

4. The discretionary power of United States courts held in Virginia over proceedings at rules, is not limited by sections 2 and 52 of the 167th chapter of the Code of Virginia of 1873, pp. 1089 and 1097.

In these suits [against E. Bossieux & Bro. and other defendants] an order was made on the first day (2d April) of the present term of the court, directing that these causes be reinstated on the rule docket. They appeared from the record to have been dismissed from that docket at the July rules, 1876, for want of declarations. Motion is now made (17th May, 1877, of the same term of the court) to set aside the order of the 2d April, on the ground that the motion to reinstate ought to have been made at the regular October term of 1876, and is now too late. Although the declarations were filed at the adjourned term of the court, held next after the July rules, 1876, at which the suits had been dismissed for want of declarations, it seems that the clerk did not make up the causes for the docket of the October term, and that the counsel of plaintiffs were not aware of that fact until shortly before the April term, 1877, when they promptly moved that the causes should be reinstated at rules. Counsel for defence, in moving to set aside and annul the order of April 2d, rely upon sections 2 and 52 of chapter 167 of the Virginia Code of 1873. Counsel for plaintiffs rely upon Nudd v. Burrows, 91 U. S. 426; Indiana & St. L. R. Co. v. Horst, 93 U. S. 291; The Palmyra, 12 Wheat. [25 U. S.] 1; Sibbald v. U. S., 12 Pet. [37 U. S.] 488; Harris v. Hordman, 14 How. [55 U. S.] 334; and Bank v. Wistar, 3 Pet. [28 U. S.] 431.

James Neeson and Thomas G. Jackson, for plaintiffs.
John A. Meredith, for defendants.

HUGHES, District Judge. These were suits at common law, and were brought to March rules, 1876, when they were each "continued for declaration." At the April, May, and June rules, they were "continued for declaration." At July rules they were dismissed for want of declaration, on the 31st of July, 1876, and on August 2d, 1876, the dec-

larations were filed, the court being then in session. Although the declarations were marked as filed, they do not purport to have been filed by leave of court. It is sufficient to conceive how they could have been filed after dismissal of the suits, except by leave of court, given on · application of the counsel for plaintiffs (himself one of the plaintiffs), who, as we all know, had been in a protracted illness. I conclude that such leave was given, and will deny the motion now made on that ground, but I would deny it on other grounds.

Section 918 of the United States Revised Statutes gives the United States courts authority to adopt rules and orders, directing (among other things) the taking rules, and making and entering up of judgments by default in vacation, and otherwise regulating their own practice. And section 914 requires that the practice, pleadings, and forms and modes of proceeding in common law suits, shall be conformed by the United States courts, as near as may be, to the practice, pleadings, and forms and rules of proceeding existing in like causes in state courts of record. Since 1872 this court has not, under section 918, adopted rules of practice conforming its own practice, pleadings, and forms and modes of proceeding to those of the state court. But section 914 is itself a general direction and authority on this subject, rendering any express adoption of rules of practice prevailing in the state courts unnecessary by this court. The Code of Virginia (page 1089, c. 167, § 6), requires the clerk to enter at rules a dismissal of any suit in which, after the lapse of three months after the defendant has been summoned, though he has not appeared, the declaration or bill has not been filed. And the same chapter of the Code (page 1097, § 52) gives control to the court at its next term, over all proceedings in its clerk's office, during the preceding vacation, with power to reinstate any cause discontinued during such vacation, to set aside any proceedings at rules, correct any mistake therein, and make any order concerning the same that may be just. The question is, whether these two sections of the laws of Virginia, operating together, are not more than rules of practice, and such as would take away from the United States courts that discretionary power over the proceedings of its officers which they have been decided to possess by the supreme court in the cases cited by plaintiff's counsel. Section 2 of this chapter of the Code, it will be observed, is more than a rule of practice, intended to govern the officers of court. It is a rule depriving a citizen of a right enjoyed before this law was enacted. It is, therefore, when enforced, in conjunction with section 52, a rule of right, and seemed to have been relied upon as such by the defendant's counsel in argument. It may be said of every rule merely of practice, that it is for the government of the officers of court, and does not deprive a court of its discretion to modify the application of it for sufficient cause. Any

law which takes away that discretion from the court ceases thereby to be a mere rule of practice. Though the plaintiff and his attorney (as in the cases at bar) may be prevented by unavoidable accident from filing their declaration within three months, this section of the Virginia Code requires that suit shall be dismissed at rule, and if not reinstated at the next term of court, makes dismissal final. Having been dismissed by the clerk, section 52, of the same law, authorizes the court at its next term to reinstate the cause; but does not in terms prohibit the court from doing so at any subsequent term upon a proper showing. Now if this last section of the law be held by the state courts, as I believe they do, to be a statute of limitation, stringent in its meaning and purpose, and prohibitory upon the court after the expiration of the first term following the dismissal at rules, then section 2d is thereby made more than a mere rule of practice; it more than directs the methods, forms, and times of proceeding in a suit to be pursued by the officers of court; it takes away in many cases (like the one at bar) a right of action; it deprives the suitor of a right, and the court of its discretion in respect to the suit. It would deprive a United States court of a discretionary power over orders of dismissal, affirmed by the supreme court in the cases cited by plaintiff's counsel. As such it does not fall within the meaning of the 914th section of the United States Revised Statutes. That section was not intended as more than a regulation of the practice in the courts of the United States. By rules of practice are meant the rules prescribed for the government of the officers of court respecting the times, forms, and methods of orderly proceeding in a court; and I repeat that rules of practice are not superior to the discretion of a court, so as to deprive it of the power to secure the trial of causes on their merits. A statute of limitation is more than a rule of practice. Section 2d of the chapter 167 of the Code of Virginia is a statute of limitations, and when enforced in connection with section 52 is more than a rule of practice. It affects very important and very valuable rights of citizens in many cases. I feel authorized therefore to hold that it does not fall within the contemplation of the act of congress of June, 1872, now incorporated into the Revised Statutes of the United States, as section 914. Section 52 of chapter 167 of the Code of Virginia does not in terms prohibit a court at a later term than the one next following a proceeding at rules from correcting those proceedings for good and sufficient cause; but is construed to do so by the state courts. If it does, it is more than a rule of practice, and becomes a statute of limitation. As a statute of limitation it does not fall within the contemplation of section 914 of the United States Revised Statutes. I arrive therefore at the conclusion that this court is not bound by section 914 to enforce the two provisions of the Code of Virginia which have been men-

tioned, because they have the character of statutes of limitation. I feel authorized to treat the motion now made as addressed to its discretion.

If the suits which were reinstated on the rule docket by the order which this court made on the 2d of April, 1877, were allowed to stand as dismissed at the July rules, 1876, the right of action is lost to the trustees in bankruptcy of the Dollar Savings Bank under the limitation of two years put by law upon their authority to sue. The court ought to prevent such a result if possible, and allow the causes which would be dismissed by default to be tried upon their merits. The well-known illness of the counsel for the plaintiffs, who was himself one of the trustees, his filing his declaration by leave of court long before the commencement of the next succeeding regular term of the court, his belief that the cause had matured for regular hearing at the October term, 1876, and ignorance of its previous dismissal at rules, and all the circumstances of the case, are sufficient grounds, in my judgment, to warrant the court in its discretion in refusing the motion now made to the court by the defendant's counsel, to set aside and annul the order of 2d of April, 1877.