Syllabus.

# In the matter of HENRY A. DUPONT, ET AL., TRUSTEES under the last will and testament of HENRY DUPONT, deceased.

*New Castle, Sept. T.* 1899.

The general rules of the Court when made and promulgated as such, have, so long as they remain unrescinded or unmodified, the force and effect of law, and are equally binding on parties and the Court. They may by general order be modified, changed or rescinded, or at the time of their adoption there may be reserved a power to exercise discretion in particular cases; but while they are in force, and without such qualification reserved, they must be applied to all cases coming within their provisions.

When a general rule allowed the Register in Chancery a stated compensation for his services in a particular class of cases; having performed the service, he acquired a right to the compensation, at the rate allowed by the rule, and that right having accrued under a general rule of court, to deprive him of it by special order made in a particular case would be analogous to the deprivation of vested rights by retrospective legislation.

The promulgation of a general rule by the Court was a decision that the power to make such rule existed, and in a case subsequently arising, the rule was enforced, it being considered that the Court should proceed cautiously in reversing its own decisions and that before doing so, it should appear very clearly that the rule which it was sought to reverse, was neither authorized by statute law then in force nor by the inherent powers of the Court of Chancery.

The provision of the Revised Code, chapter 125, section 45, that "Any court wherein, or under the order of which any services not herein expressly provided for are performed, may, in its discretion, make a reasonable allowance for such service," independently of the common law powers of the Court, authorized the making and promulgation of a general rule fixing the amounts to be allowed to the Register in Chancery "for filing and proving, recording and indexing and copy of trustees accounts."

OBJECTION TO COSTS CHARGED BY REGISTER.—The account of the trustees under the will of Henry duPont for the year ending July 31, 1899, was filed, showing a balance carried over from the last account of $1,052,272.62. Income had been received since the last settlement amounting to $93,828.14, making an aggregate of $1,146,100.76. On this amount the Register claimed to be entitled to a charge of $606.00.

At the March Term, 1893, the then Chancellor had announced an additional rule of Court, as follows:

It is ordered by the Chancellor, that the following amounts be allowed the Register "for filing and proving, recording and indexing, and copy of Trustees' Accounts," viz:

| | | | |
|---|---|---|---|
| Over $300. | and under | $500. | $3.00 |
| " 500. | " " | 700. | 5.00 |
| " 700. | " " | 800. | 6.00 |
| " 800. | " " | 1000. | 8.00 |

Above $1000. .25 for every $500. or fractional part thereof; and $1.00 for everv page thereof over 2 pages.

*L. C. Vandegrift*, for the trustees, objected to the charge made by the Register:

(1) That the amount claimed by the Register is excessive under the law. The charge includes the commission, not only upon the income received since the last settlement, but on $1,052,272.62 carried over from the last account.

This balance was carried over simply for the purpose of making the connection between this account and a previous one. It does not represent any new funds coming into the hands of the trustees, but only an amount upon which the Register has already made a charge.

(2) There seems to be no authority which authorizes the Chancellor to make a rule fixing the amount of costs to be charged by the Register in such a case as the present one. The charges of the Register are fixed by Chapter 125 of the Revised Code, and provision is there made for services covered by the rule of 1893. It would seem that section 3 of chapter 95 of the Revised Code does not give to the Chancellor the right to fix the amount of charges of officers. It applies to the rules for the conduct of cases. It might be that under it the Chancellor would be authorized to determine by whom the costs of an account should be paid in a contest between the *cestuis que trusts*, but he could not, by rule or otherwise, change the amount to be charged.

At common law there were no costs allowed. For services such as were involved in this case the officer might re-

cover as in any other case of services rendered, and the Court had nothing to do with enforcing their payment.

It required an Act of Assembly to enable the Register of Wills to charge fees for recording accounts. 13 *Del. Laws, ch.* 159.

Prior to 1889 trustees' accounts were not recorded, but in that year an Act was passed authorizing the Levy Court to pay the Register in Chancery for having copied in suitable books with indices all accounts which had been passed by the Chancellor since January 1, 1860, but no provision was made for continuing the record. 18 *Del. Laws*, 942.

The practice of recording such accounts has prevailed since that time, but there seems to be no such legislative statute for it.

*John H. Rodney*, for the Register in Chancery.

The system of calculation of fees for the Register is based on an order made by the Chancellor at the March Term, 1893, and it has been uniformly acted upon in other cases, and even in former accounts passed in this estate.

With respect to the objection that the commission is calculated upon the amount of the balance of the previous account carried over, it is enough to say that whatever amount enters into the account the commission should be calculated upon it.

While at common law no costs were originally allowed, there seems to have been a different practice in the Court of Chancery.

By 17 *Rich.* II, *page* 6, costs were allowed in Chancery at the discretion of the Chancellor. *Beames on Costs*, (22 *Law Lib.*) 4.

In *Jacob's Law Dictionary*, under the title of costs, it stated that the awarding of costs in a court of equity is always discretionary, and in some cases in awarding the same the discretion of the Court will be guided by the oath of the party. *Dyer vs. Tymewell*, 2 *Vern.* 123.

There is an inherent power in the Court of Chancery to fix and allow costs. *Neel vs. Neel*, 1 *Grant Cas.* 171; 2 *Madd. Ch. Prac.* 419; 2 *Dan. Ch. Pr.* 1449.

In *chapter* 114, *section* 4, of the *Revised Code*, it is provided that courts of equity shall make such order concerning costs in every case as may be agreeable to equity. That this is to be construed as giving full liberty to that Court appears by the case of *Brown, Ex'r. vs. Rogers*, 1 *Houst.* 458, where the Superior Court, upon appeal from the Register, allowed the costs and expenses of the executor in defending a will, although the fee bill did not provide for it.

There appears to be also complete statutory power to make such a rule in the general provision contained in the fee bill. *Rev. Code* (1893) 919, *ch.* 125, *sec.* 45.

THE CHANCELLOR was of opinion that the general rules of the Court when made and promulgated as such, have, so long as they remain unrescinded or unmodified, the force and effect of law, and are equally binding on parties and the Court. They may by general order be modified, changed or rescinded, or at the time of their adoption there may be reserved a power to exercise discretion in particular cases; but while they are in force, and without such qualification reserved, they must be applied to all cases coming within their provisions.

He considered that under the particular rule in question, the Register having performed the service had acquired a right to the compensation at the rate allowed by the rule of court, and to deprive him of it by special order made in a particular case would be analogous to the deprivation of vested rights by retrospective legislation.

With respect to the objection of want of power to make this rule, he considered that the promulgation of the rule was a decision by the preceding Chancellor that the power existed; and this Court should proceed cautiously in reversing its own decisions, requiring that it should appear very clearly that the rule which it was sought to ignore was neither authorized by statute law then in force, nor by the inherent powers of the Court of Chancery. The authority conferred by *Rev. Code* (1893) 919, *ch.* 125, *sec.* 45, cited by counsel for the Register in Chancery, seemed to be sufficient independently

of the common law powers of the Court to cover the case and had evidently been so held by Chancellor Wolcott.*

The objection to the charge made by the Register in Chancery was overruled and the account was approved and passed as it had been stated.

NOTE.—The Chancellor considered the binding authority of rules to be too well established both in principle and by authority to cite cases upon the subject; but it may be useful to refer in a note to the principal American authorities, for the convenience of the solicitors of this Court. They show how frequently and how thoroughly the subject has been considered by our Courts.

The doctrine that general rules are binding upon the Court, as well as upon parties, until rescinded or modified by general order, except where in the original rule or body of rules, there is reserved a power to exercise discretion in particular cases, has been recognized in many states.

The law as stated by the Chancellor has been applied to a great variety of rules in language so nearly similar in its terms as to seem more like the deliverances of courts of the same jurisdiction than of entirely independent ones, as are those of the different States from which the cases are cited. The decisions to this effect are as follows: *Carroll vs. Barber*, 7 *Har. & J.* 454; *Wall vs. Wall*, 2 *Har. & G.* 79; *Benson vs. Davis*, 6 *Har. & J.* 272; *Abercombe vs. Riddle*, 3 *Md. Ch. Dec.* 320; *Hughes vs. Jackson*, 12 *Md.* 450; *Quinn vs. Brook*, 22 *Md.* 288; *Thompson vs. Hatch*, 3 *Pick.* 512; *Tripp vs. Brownell*, 2 *Gray* 402; *Rathbone vs. Rathbone*, 4 *Pick.* 92; *Parker vs. Blood*, 128 *Mass.* 543; *Pratt vs. Pratt*, 157 *Mass.* 503, 21 *L. R. A.* 97; *Witzler vs. Collins*, 70 *Me.* 200; *Walker vs. Ducross*, 18 *La. Ann.* 703; *Beveredge vs. Hewitt*, 8 *Ill. App.* 467; *Owens vs. Ranstead*, 22 *Ill.* 161; *Lancaster vs. Waukegan, &c. R. R. Co.*, 132 *Ill.* 492, 24 *N. E.* 629; *Magnuson vs. Billings*, 152 *Ind.* 177; *David vs. Aetna Insurance Co.* 9 *Ia.* 45; *Burlington & Mo. River R. R. vs. Marchand*, 5 *Clark* (*Ia.*) 468; *Little vs. Ivancovitch*, 10 *Nev.* 41; *Baker vs. State*, 84 *Wis.* 584; *Ogden vs. Robertson*, 15 *N. J. L.* 124;*Marsh vs. Crawford*, 1 *Swan* 116; *Maultsby vs. Carty*, 11 *Humph.* 361; *Coyote G. & N. S. Co. vs. Ruble*, 9 *Ore.* 121.

In the case last cited the opinion of Lord, C. J., (originally a member of the Delaware Bar) contains the most thorough and elaborate discussion of the subject to be found in any of these cases.. In many of the above cases the violation of its rule by the court was held to be reversible error.

*The fees prescribed by the rule under consideration in this case have been recently approved by the Legislature, by the enactment of a revised fee bill containing essentially the same rate of charges prescribed by this rule. 24 *Del. Laws* 668, *ch.* 246, *sec.* 13.

Note.

In some jurisdictions, a disposition has been shown to relax the operation of general rules in case where their enforcement would have worked hardship or injustice, but in no single case has it been done when anything analogous to a property right would be thereby divested. The cases which may be consulted in a thorough examination of the subject are here noted, but it is to be observed that in many of them, what was said upon the subject under consideration was *obiter*, while in others the rules in question were those of pleading or practice merely, and in most of them there was no discussion of the question and usually there appears to have been no examination of authorities. *Sheldon vs. Risedorph*, 23 *Minn.* 518; *Gillette-Herzog Mfg. Co. vs. Ashton*,5 5 *Minn.* 75; *Lance vs. Bonnell*, 105 *Pa. St.* 46; *DeLeon vs Owen*, 3 *Tex.* 153; *Denning vs. Foster*, 42 *N. H.* 165; *Eastman vs. Amoskeag Mfg. Co.*, 44 *N. H.* 143; *Greene vs. Harris*, 11 *R. I.* 5; *Smith vs. Smith*, 1 *Paige* 391; *Caldwell vs. Mayor of Albany*, 9 *Paige* 512; *United States vs. Breitling*, 20 *How.* 252; *Russell vs. McClellan*, 3 *Woodb. & M.* 157, *Fed. Cas. No.* 12, 158; *Wallace vs. Clark*, *id.* 359; *Fed. Cas. No.* 17098; *So. Pacific Co. vs. Johnson*, 69 *Fed. Rep.* 559; *Mutual Building Fund vs. Bossieux*, 1 *Hughes* 386; *McNeish vs. Hulless Oats Co.*, 57 *Vt.* 316.

In California, the cases are conflicting. The rules are held binding in *Hagar vs. Mead*, 25 *Cal.* 599 and *Hanson vs. McCue*, 43 *Cal.* 178. Decisions conflicting with these are *People vs. Williams*, 32 *Cal.* 280; *Prickett vs. Wallace*, 54 *Cal.* 147; *Sullivan vs. Wallace*, 73 *Cal.* 307.

Citations from English authorities are not made because they would only disclose such differences in the way of statutory regulation, and in the constitution of the courts as to render them valueless for the purposes of this note, unless accompanied by citations and comments beyond its province or scope.