### JOHN G. WALKER *v.* BARNET WAIT AND OTHERS.

*Partnership.    Promissory Note.    Charge to the Jury.*
*Statute of Limitations.*

A voluntary association composed of many members, adopted by-laws for its government, which gave the partnership an associate name, and provided for certain officers, and prescribed their duty. The capital stock of the company was divided into shares, and every shareholder became a member of the association. The association voted to raise a certain sum of money for the purposes thereof, and authorized its directors to borrow the same, which they did of one of their own number, and the person holding the offices of agent, clerk, and treasurer, gave a note therefor, whereunto he was authorized by the directors, whereby the association purported to be the promisor, but which was signed by such person with the official designation of treasurer. *Held*, that the note was binding on the members of the association.

A note by a partnership to one of its members for money borrowed, may be enforced at law in the name of an indorsee not a member of the partnership, although the payee be a party defendant, and the real owner of the note,—no reason appearing why a judgment at law would not do legal justice between the real parties.

Unless request be made for a certain extent and minuteness of charge, when what the court does say is sound and proper in law in its application to the subject and question in issue, exception will not be maintained for the failure of the court to say more, unless thereby the jury would be misled.

Whether the death of some of the members of a partnership works a dissolution thereof, depends on the terms and effect of the contract of formation, and the character of the organization.

Payments made by the treasurer of a partnership from partnership funds, and by him indorsed on a partnership note, take the note out of the Statute of Limitations, in the absence of any showing that he acted without authority and without duty.

ASSUMPSIT on a promissory note dated November 21, 1867, whereby, for value received, The Londonderry Water Power Association promised to pay to the order of Avery B. Stowell three hundred dollars on demand, with interest annually,—signed, A. M. Albee, Treasurer. Pleas, the general issue and Statute of Limitations. There were thirty-three defendants, and said Stowell and David Arnold were among them.

The plaintiff introduced evidence tending to prove, that in the fall of 1866, a man from Massachusetts came to Londonderry and wanted to go into the business of manufacturing woolen goods

there ; that not having sufficient capital therefor, he proposed to the citizens of the vicinity that if they would buy the land and water-privilege, erect a building and a dam on West River, which ran through the village, and make the water-wheel, flume, etc., he would put in the necessary machinery for manufacturing, and pay a rent of ten per cent. on the cost of the outlay by the citizens ; that thereupon the citizens held a meeting, at which $2500 was estimated as the cost of making such purchase and erections, and a resolution adopted to raise that amount by dividing the same into one hundred shares of $25 each ; that the shares were all subscribed for, and that the meeting resolved to call the subscribers, " The Londonderry Water Power Association " ; that the shareholders adopted by-laws by which they were to be governed in carrying out the purposes of the association, and which provided that the association should be known by the name aforesaid ; that there should be elected annually by and from the members thereof, " a president, vice-president, clerk, treasurer, agent, and three directors," who should hold their office one year, and until others were chosen, and prescribed their duties —the agent " to transact any business and execute any contracts that may be necessary, under the direction of the association or their directors " ; the directors " to have a general charge of all matters appertaining to the business of the association," etc. ; and also prescribed the manner of transferring stock ; that at one of the first meetings of the shareholders, they agreed to apply to the Legislature for an act of incorporation of certain members named and their successors, under the name aforesaid, and that any person paying $25 should be entitled to one share of the capital stock, and become a member of the association, and be entitled to one vote for every share taken ; that at the next meeting thereafter, on March 26, 1867, the shareholders elected said A. M. Albee clerk, treasurer, and agent, and A. N. Howe, A. B. Stowell, and David Arnold directors, and said Stowell president ; that said association was never incorporated, either by special act or under the general law, but had continued to do and was still doing business under said name ; that it was not designed nor contemplated that any business should be done by said company

except to erect the building, dam, etc., as aforesaid, and rent the same, and that it never transacted any business except to collect the rent and keep the building in repair — the manufacturing always having been done by others ; that the land for the site of said building, dam, etc., was purchased, and the deed taken to certain persons styled directors of said association, who held the title in trust for the members of said association ; that work on the dam, building, etc., was nearly completed in October, 1867, and that at a meeting of said shareholders held that month, and before the 19th, it was ascertained that it would take $500 more to pay for completing said erections.

Defendants' evidence tended to show that said Arnold was present and notified said meeting that he should have nothing more to do with the company, and should sell his shares therein, and that on the 19th of said October he did sell all his interest in the building, dam, etc., and his shares of stock, eight in number, to Geo. L. Hobart, one of the defendants, and deeded the same to him on that day, and that the deed was recorded on the 29th of that month ; that immediately after said 19th of October, Arnold gave notice to Albee, treasurer, clerk, and agent as aforesaid, that he had sold his interest in said company, and that before the 27th of said October he gave like notice to Stowell and Howe, the other directors, and that he could no longer act as a director of the company.

Plaintiff did not question the execution of said deed by Arnold, but called Stowell as a witness, who testified that he had no recollection of Arnold's giving him notice of his withdrawal from the company ; that he had frequently heard him talk about the business of the company, and had seen him at the meetings of the company, and supposed he was a member of the company when witness loaned the money and took the note in suit.

It appeared that at a meeting of the company held on the 27th of said October, it was voted that "the directors be authorized to borrow $500 to complete the works begun and pay the indebtedness of the company which they owe for building said factory," and that the clerk recorded said vote in the company's book of record ; and that in November, 1867, Stowell and Howe executed

a writing, authorizing the treasurer to give notes for $500 thus to be borrowed, which authorization was also recorded by the clerk of the company. On the 21st of said November, Stowell, still being president and director as aforesaid, let the company have, through Albee, $300, and took the note in suit, and Albee paid the money towards completing the works and paying the debt incurred in erecting the building, etc., There were three indorsements on said note ; one of $18 as one year's interest, Nov. 21, 1868 ; one Nov. 21, 1870, of interest to that date ; and one of $500, Aug. 30, 1876.

Plaintiff introduced evidence that was not disputed, showing that the first indorsement was made by Albee while he was treasurer, clerk, and agent as aforesaid, from money received by him for rents of the business, and that the last indorsement was made by Albert L. Wait, who was then treasurer, from money received from the same source ; but there was no evidence to show that any of the members of the company authorized or knew of either of said payments and indorsements. Plaintiff also offered evidence tending to show that some time in the summer of 1876, Stowell carried the note in suit to an attorney for collection, and directed the attorney to indorse the same to the plaintiff, or order, which was done.

Defendants introduced said deed from Arnold to Hobart, and called Arnold as a witness, who testified that he gave Albee and the directors notice as aforesaid, and had since had nothing to do with the company on his own behalf, but admitted on cross-examination that he attended a meeting of the company in the fall of 1868, at the request and on behalf of one Davis, a shareholder, and voted by proxy on his shares, but said that he announced to the meeting that he was acting for Davis and not for himself.

Defendants also introduced evidence tending to show that plaintiff had said during the term that he had no interest in the suit, and should not attend the trial, and that he did not attend. Plaintiff thereupon recalled said Stowell, who testified that plaintiff told him that if the note could be collected he would give witness $300 for it ; but he admitted that plaintiff had neither paid him anything, nor given him any obligation to pay, and he would not

say that plaintiff was to pay him anything if the note was collected, nor that he was to have the avails if it was collected. Defendants also proved that four of the subscribers to the stock of said company died before this suit was brought; that one of them died before the note was given; and that they all owned their shares at the time of their death.

Defendants requested the court to charge, 1st, that the death of four members of the partnership worked a dissolution thereof, as it was formed only for a particular purpose. The court refused to charge as requested, but left it to the jury to say whether, from all the evidence—the by-laws of the association, the fact that the association was still in existence under the same name, the purpose for which it was formed, the manner and way of doing business, and the provision in the by-laws for transferring the stock, &c., the shareholders or members of said association intended or designed that the partnership was to be continuing or permanent, or whether the same was in this respect like an ordinary partnership, which would be dissolved on the death or withdrawal of a member, and the business terminated; and told the jury if they found that the partnership or association was to be continuing and permanent so as not to be dissolved on the death or withdrawal of a member, then this part of plaintiff's case was made out; but if they failed to find this such a partnership, then plaintiff had failed to make out this part of his case, and the verdict should be for defendants. This proposition of the charge was properly explained to the jury.

2. That the payments made by Albee and Wait, and the indorsements made by them on said note, without the knowledge of the other shareholders, would not prevent the Statute of Limitations from running on the note as to all except those who paid the money. The court refused to so charge, but charged that it would prevent the statute from running against any of the defendants.

3. That as the company had authorized its supposed directors to borrow the money, the directors had no power to delegate that authority to another person to give a note, and certainly not to one of the two then remaining directors, and that said note was

void; that Albee had no power to sign it; and that although Stowell might have a just and an equitable claim against the company, it was not an assignable claim that could be sued in the name of the assignee. But the court decided from the above facts, that Albee could give a valid note that was negotiable, and that the suit could be maintained in the plaintiff's name.

4. That if plaintiff had no interest in the note nor in the suit, and the same still belonged to Stowell, this suit could not be maintained, as Stowell would, in fact, be both plaintiff and defendant. But the court held that if Stowell still owned the note, the suit might be maintained in plaintiff's name.

5. That as Arnold had sold his interest in the company, and the deed was recorded in the town clerk's office in Londonderry before the note was given, and he had given notice to Albee and to the supposed directors before the note was given, that he was not a member of the company, he was not liable on the note. The court refused to so charge, but instructed the jury that if they found the partnership or association to be a continuing or permanent partnership, not to be dissolved on the death or withdrawal of a member, the plaintiff was entitled to recover against all the defendants except Arnold, who had an additional ground of defense that the other defendants had not; and as to Arnold the court charged substantially as follows: that the law required of a member of a partnership, on withdrawing from a firm, to give notice of his withdrawal by publication or in some other way, in order to protect himself from liability that might be incurred by the firm in favor of parties who supposed that he was still a member; and that unless they found that Arnold so conducted himself in his withdrawal from the partnership or association, by putting his deed on record, by saying what he did to Albee and to Stowell, if anything, as to make it probable that Stowell knew he had with-. drawn from the association, then Arnold would be liable, provided Stowell did not know that Arnold had withdrawn, and he loaned his money to the association on the credit of Arnold as well as of the other members of the association.; that Arnold stood differently from the rest of the defendants; that when a person is a member of an association under the circumstances he was a mem-

85

ber of this, the law requires him to do something to give notice to the world in some way, or to do something that people may understand he is no longer a member of the firm ; that if he did this—did enough so that Stowell knew or ought to have known that he had retired from the association, then Arnold was not liable.   On the other hand, if they found that Arnold was negligent, and did not do what was necessary to be done in order to give Stowell to understand that he had withdrawn from the association, and Stowell did not know he had withdrawn, then the verdict should be against him, as well as against the rest of the defendants, if they found that plaintiff has made out his case on the other point submitted to them.

The charge, in other respects, was such as the case required, and was not excepted to.   Verdict for the plaintiff against all of the defendants, including said Arnold.   To the above decision of the court, the charge as given, and the refusals to charge as requested, the defendants except.

*A. L. Miner* and *J. W. Beebe,* for defendants.

*J. L. Martin* and *J. G. Martin,* of counsel for plaintiff.

The opinion of the court was delivered by

BARRETT, J.   The association is not a corporation, but is a voluntary association for the purpose designated.   It was formed for the purpose of becoming the owner of the described water power, and of putting it into condition for use, by doing the things specified ; and the associates were to have individual interest respectively in the property, and the income of it, in the proportion of the contribution of each towards the sum required to purchase the property, and to put it in the proposed condition.   By the nature of the association, the relation of the persons constituting it to each other, and to the outside world, was that of partners.   The paper of organization and the by-laws made provision, as to modes and agencies, by which the business was to be done.   In an ordinary partnership, unless special provision is made in that behalf, each partner may act authentically in the business of the company,

and bind the company thereby. In the present case the associates agreed in what way the business should be done, viz., by certain persons to be selected as provided, and designated by official names. The persons called *directors* were to do the business as and for the company, instead of having each member do or help do it. In certain respects they were to be helped by some one called agent, clerk, and treasurer. He was to be subordinate to the directors, not substituting them in the conducting of the business that required judgment, discretion, and decision, but acting rather ministerially, facilitating the carrying into effect of what had been determined by the directors to have done. He was the manual keeper of the funds. He was to pay out the funds; but was not to negotiate the transactions resulting in such payment. He did the pen-and-ink work of making records and accounts, and of drawing papers, instead of these things being done by the directors personally, — not in matters negotiated and transacted by himself, but in matters negotiated and transacted by the directors alone, unless in special respects he may have had authority to do some things as the agent of the association. In this case the company voted to borrow $500 for use in the business in hand. It was for the directors to negotiate the loan. They did so for $300 of it, of Stowell, one of the directors. That was doing what the company had authorized. It was lawful and proper. It was of no concern to the company of whom the money should be procured, provided no prejudice should result on the score of the terms of the loan. And no such prejudice was caused. The loan was to be evidenced in some proper way, according to the contract and the usages of business. The contract was for a loan on six per cent. annual interest, and payable on demand. The note was drawn accordingly—a promise of the association to pay according to the contract, and was signed by the person holding the office of agent, clerk, and treasurer, with the official designation of treasurer appended to his name. It was his office and business to use the pen for that purpose, as the pen of the company, instead of having each of the directors, or each member of the company sign his name to the instrument. This was conformable to, and was acting out, the mode adopted

by the company for the doing of the business of the company. It was creating, as by the hand of the company, the instrument and evidence of the contract of the company, made by the directors. The drawing and signing of the note, as was done in this case, did not involve any function beyond that of the clerkship and agency with which Mr. Albee was invested.

That instrument, in its form and manner of execution, differs from the instruments in the cases where they are held to be the promise or covenant of the person signing with his name, followed by some official suffix. In those cases the instruments purport to be the promise or covenant of. the person by whom signed. In this case the instrument is expressly the promise of the company; and as before expressed, the function of Mr. Albee was merely to authenticate it by a manual act in behalf of the company, of the same effect in law as would have been the signing of it by all the members of the company.

The borrowing of the money having been authorized by the company, and the note having been given for it, the same as if it had been borrowed of any outside person, the association, as such, became the debtor of Stowell, in the same sense as it would have become debtor to anybody outside by such transaction. A partnership, or joint stock company, is just as distinct and palpable an entity in the idea of the law, as distinguished from the individuals composing it, as is a corporation; and can contract as an individualized and unified party, with an individual person who is a member thereof, as effectually as a corporation can contract with one of its stockholders. The obligation and the liability, *inter partes*, are the same in the one case as the other. The only practical difference is a *technical* one, having reference to the *forum* and form of remedy. In the cases it has been held that a person could not sue the partnership of which he was a member, for the reason that he would thus appear personally on both sides of the record: as plaintiff, he would be suing himself as defendant partner; or as plaintiff partner he would be suing himself as an individual defendant—a technical incongruity that the law does not tolerate. At the same time, the creditor partner could betake himself to a co-ordinate forum in which such technical incongruity

would not be involved in the proper pleadings and procedure, and find remedy according to the substance and legal effect of the contract or other cause of action.

When, as in this case, the note has been transferred to another, according to the law governing such paper, that law authorizes the bringing of a suit in the name of the holder, without any regard to whether he holds it for consideration or not. The technical rule on the subject would thus be answered, and, at the same time, the substantial rights would be enforced most directly, and with full justice as between the real parties, in case they should stand upon the naked original transaction. If anything should have occurred to complicate and modify or discharge such rights in such a way that a judgment in a suit at law would not do legal justice between them, then, for reasons of substance, resort would need to be had to the other forum by the one party or the other. But unless *such* reason should exist for such resort, *no* reason would exist; because, as in the present case, the technical difficulty of having the same party by name on both sides of the record would not be involved. Nothing appears, as the case is now before us, giving occasion for denying the right to maintain this suit.

Without regarding especially the language used in the printed opinions in the case of *Downer* v. *Norton*, 15 Vt. 569, and of *Ormsbee* v. *Kidder*, 48 Vt. 361, the judgments in those cases upon the facts which make up each case respectively, are direct authority for what we hold in this case. So far as the technical rule in question is concerned, it can make no difference whether the holder is such for value or not.

As to what pertains to Mr. Arnold peculiarly it is remarked, 1st. There is no provision of law for the recording in the town clerk's office of the contract and regulations for the organization and transaction of such an association as this was and is. Mr. Arnold was originally and for some time a member of it, and as such was liable in the character and relations of a partner. Whether he was liable on this note or not, depended on whether he had done what was legally necessary in order to be acquit of partnership liability when this note was given. The selling out to another would not, of itself, be sufficient, as against one who

had known of his being a member, and who had dealt with the company in the supposition of, and in reliance upon, his being a member, and who did not know, nor was chargeable with knowledge, that he had in fact ceased to be a member.

The record vouched in this case did not, of itself, charge Stowell with such knowledge. Whether he had such knowledge, or was chargeable with it, was to be found by the jury, as an open question upon the evidence. That question was submitted to the jury upon a charge to which, in that respect, exception was taken. 2d. The criticism of the charge in that respect is, " that the court left it to the jury to decide whether Arnold did ' *enough*,' &c., without telling them what was *enough;* " that " the court told the jury that the law required him to give notice to the world, or do something so people might understand, &c., without telling them what that something was. He should have told the jury what was necessary."

It is to be noticed that the only request as to Arnold was, that the court should charge that as Mr. Arnold had sold out, and his deed was recorded before the note was given, and he had given notice to Albee and to the said supposed directors that he was not a member of the company, said Arnold was not liable on said note.

The learned counsel did not indicate anything else, either in particular or in general, as the subject of request to charge on that subject.

In looking into the charge, it is plain, and the contrary is not intimated, that what the court did say, as reported, was lawful and proper. The exceptions say that as to said Arnold, " the court charged the jury *substantially* as follows "—purporting to give only the *substance* of the charge. It cannot be said that error in law is shown to have been committed in not going to the extent now claimed in argument that the court should have gone ; because, 1st, it is not shown that the court did not go to that extent. 2d. The court was not requested to go to that extent. 3d. Unless request is made for such extent and minuteness of charge, when what the court says to the jury is sound and proper in law in its application to the subject and question in hand, exception

will not be maintained for the failure of the court to say more, unless by such failure the jury would be misled. It is not apparent, nor reasonably supposable, that the jury were misled by that means in this case.

As to the other points of exception noticed in the argument, there seems to be no occasion for extending the discussion. The subject of the death of some members of the company, as affecting the existence of the company, was properly submitted to the jury. Whether such deaths would work a dissolution or not, would depend on the terms and effect of the contract of formation, and the character of the organization.

The indorsements of payments on the note were properly to be made by the person whose office made it his duty to pay, and that person was the treasurer. The company acted through him; and his act in that respect is to be regarded as the act of the company, in the absence of any showing that he, in what he did, acted without authority and without duty. Nothing to that effect is shown, either directly or by inference.

Judgment affirmed.