GEORGE W. McNEISH *v.* THE U. S. HULLESS OAT COMPANY.

*Partnership, Death of Partner. Dissolution, When for the Jury to Determine. Evidence. Rule 21, Washington Co. Ct. Deposition. Practice.*

1. While the death of a partner generally works the dissolution of a partnership, it does not have that effect when the partnership contract shows the intention of the parties was to give it a continuing existence; as when it takes the form of a joint stock association, with transferable shares, officers, records, and a general agent to transact the business.

2. It is for the jury to determine on a reasonable construction of the articles of agreement, interpreted by the kind of business contemplated, and the manner of transacting it, whether the intention was that the partnership should be continuing, or dissolved by the death of a partner.

3. Dealing in *hulless oats* was the main business of the partnership, under the control of a general agent, with a provision that its "affairs" were to be kept secret; *Held*, that the partners might be liable for *common oats* purchased by an agent, although it was not proved that they knew of the transaction; and that it was their duty to see to it, that their agents transacted no business outside the scope of the partnership.

4. What the agent said to the vendor at the time of the sale as to who the partners were and what their responsibility, was admissible evidence.

5. DEPOSITION. CHARGE. PRACTICE. It is presumed that there was no error in the charge of the court, or in admitting a deposition, when no copies of them were furnished the Supreme Court, though referred to and made a part of the exceptions; and that the court exercised its discretion in admitting a deposition.

6. DEPOSITION. NOTICE. A rule of court has been complied with, which requires notice to be given for the taking of a deposition out of the State fifteen days before the term of court, when notice was given only fifteen days prior to an adjourned term, the adjournment having been announced through the public press; and also, although the taking of the deposition was adjourned to a time only three days prior to the adjourned term, the opposite party not appearing.

7. The depositions were properly in the hands of the jury, although no special leave was granted by the court, the court having remarked in its charge that the "depositions would be before them."

8. It is in the discretion of the court to relax the rules of court.

ASSUMPSIT. Trial by jury, March Term, 1884, Washington County, POWERS, J., presiding. Verdict for the plaintiff.

The plaintiff lived in New York. It was claimed that the defendant company was composed of members in New York and Vermont. The writ was served on Sidney Wallace, Wm. F. Gillett, N. W. Vinson, Wm. Clark; and Charles S. Wallace was afterwards cited in. It appeared on trial, that the said parties, who lived in Vermont, and certain other parties living here, and one J. K. Sanborn, who lived in Pennsylvania, some years ago, and before the account in question accrued, agreed to form a copartnership, and drew up and signed articles of agreement. The plaintiff's account was for 514 bushels of common oats, claimed to have been sold to the said U. S. Hulless Oat Company, and purchased by said C. S. Wallace, a subagent, at the instance of said Sanborn, who claimed to be the general agent of the company. It appeared that two of the parties who signed the original articles of agreement, deceased before said account accrued; and it did not appear that the defendants, Vinson and Gillett, ever consented to continue said partnership, or to proceed with that or any other partnership after their decease. But the business after their decease was not closed up or liquidated, but proceeded as before, though there was no evidence that Gillett and Vinson knew what was being done by the company. It did not appear, that said Vinson and Gillett knew anything about the purchase of common oats, or ever consented to the purchase of such oats. It did appear, that some of the other defendants held meetings, and agreed to continue the partnership, and extend it beyond the scope of the original agreement; but it was not claimed, and it did not appear, that said Vinson and Gillett ever consented to any such arrangement, or ever knew what said company was doing.

The main question was as to the liability of Gillett and Vinson. The articles of agreement stated in part, that the subscribers

"Do form themselves and create themselves into a co-

partnership or company, to do the business of cultivating, and fitting for use, as food for man and feed for animals, and for seed, the grain known by the name of hulless oats, and find a market for the same in every portion of the United States of America, and in every other portion of the world.

"And the duration of this co-partnership shall be the term of five years from the first day of January, A. D. 1876.

"And this co-partnership shall be known and designated The United States Hulless Oat Company."
*  *  *  *  "The general agent shall not, nor shall any of the officers of the company, contract any debt for any purpose whatever, unless authorized to do so by the company. Neither shall the company contract any debt without the consent of each member made in writing."  *  *  *  *
"It shall be the duty of the officers and members of the company to keep a profound secret the rules and regulations of this company, together with all its contracts and affairs of whatever kind or nature, except to parties in interest with the company to know."

The officers consisted of a president, secretary, and general agent.

*N. L. Boyden,* for the defendants.

Two of the partners deceased before the plaintiff's account accrued. Neither Gillett nor Vinson ever consented to proceed with the business, or even knew what the others were doing. The partnership was dissolved by the death of the two partners. Story Part. s. 195; *Woodworth* v. *Downer,* 13 Vt. 522.

The purchase of common oats was not within the scope of the partnership agreement, and defendants Gillett and Vinson cannot be made liable unless proof is adduced that they knew of the transaction and assented to it.

No such proof was adduced and they knew nothing of the transaction as exceptions show. *McNeil* v. *Reynolds,* 9 Ala. 313; *Goodman* v. *White,* 25 Miss. 163; 8 Mich. 526; *Clayton* v. *Hardy,* 27 Mo. 536; 30 N. Y. 344; *Chapman* v.

*Devereux,* 32 Vt. 616. The deposition was improperly admitted. *Cottrill* v. *Vanduzen,* 22 Vt. 511; *Noyes* v. *Cushman,* 25 Vt. 390.

*C. W. Porter,* for the plaintiff.

The death of the two partners did not dissolve the partnership, as it was designed to be continuing. *Tenney* v. *N. E. Protective Union,* 37 Vt. 64; *Walker* v. *Wait,* 50 Vt. 668. The deposition was properly admitted.

Rules of court, and practice under them, are subject to control and modification by the court in its discretion, in the interests of justice, and no exception lies to rulings respecting them. *Bank* v. *Marsh,* 46 Vt. 443.

The opinion of the court was delivered by

Ross, J. I. As contended by the counsel of Gillett and Vinson, generally the death of a partner works the dissolution of the co-partnership. Usually, each partner is the agent of all the other partners in regard to the transaction of the partnership business; and thus, special confidence and trust are reposed by each partner in all the others. When one partner is removed by death, his judgment and discretion in the management and transaction of the partnership business is forever at an end; and, in an ordinary partnership, it is not within the contemplation of either the deceased partner, or of his associates, that the partnership business should proceed so as to bind his estate, or the surviving partners, by new transactions after such decease. The law holds, in ordinary partnerships, that the decease of a partner works its dissolution, because such is clearly the intention and scope of the contract of partnership. But the partnership contract may be such as to clearly show that it was the intention of the parties to it to give it a continuing existence, although there should intervene a withdrawal of some of its members by transfer of stock, or their interest in the partnership, or by death. Hence, where, as in the

case at bar, the partnership takes the form of a joint stock association, with shares transferable, with the form of a corporation, with regular officers, meetings, and records, with a limitation upon the agency of the different partners in.the transaction of the partnership business, and the transfer of the transaction of the business wholly to a general agent, when one or more of the partners decease, the question that arises, is, whether, upon a fair and reasonable construction of the articles of agreement, interpreted by the kind of business contemplated, and the manner of transacting the business, it was the intention that the partnership should be continuing, or that it should be dissolved by the death of one or more of the partners. In *Tenney* v. *N. E. Protective Union,* 37 Vt. 64, and in *Walker* v. *Wait,* 50 Vt. 668, it is held, that, in this class of cases, it is proper to submit to the trier of facts to determine whether the partners contemplated and intended, under the articles of partnership, and all the facts and circumstances attending the transaction of the partnership business, both before and after such death, and the provisions for the transfer of the stock, that the partnership should continue and go forward in its business notwithstanding some of the members might decease. There was clearly evidence in the case, which entitled the plaintiff to go to the jury on this question, as it was submitted in *Walker* v. *Wait, supra.* The defendants, Gillett and Vinson, were not entitled to have the County Court hold as a matter of law that the death of Smith and of Jones, two of the subscribers of the articles of partnership, wrought a dissolution of the partnership. The business continued after their decease the same as before. The business was done in a name other than the name of any of the members. The partnership articles of agreement provide that the partnership shall continue five years; that the stock may be increased and diminished, and transferred in a particular way; that the business shall all be transacted by one general agent, clothed with power to appoint

sub-agents; and that two thirds of the members present at any regular meeting may transact the business of the meeting. All this was evidence, on which the plaintiff had the right to have the jury pass in determining whether the partners did not intend that the business should continue, notwithstanding the decease of some of the members. The charge of the court on this question, or on any question in regard to the liability of Gillett and Vinson, though referred to and made a part of the exceptions, has not been furnished, by the excepting party, to this court. No presumption arises that it was erroneous, or lacking in any essential requisite of a proper charge, on this subject. The presumption is that it was full and to the point, and for that reason the excepting parties do not furnish it, nor their counsel point out any errors in it. It must, therefore, be held that there was no error in the action of the County Court on this contention.

II.  It is also contended that the purchase of common oats was not within the scope of the partnership business, and that the excepting defendants cannot be made liable for their purchase without proof that they knew of the transaction and assented to it. Raising, selling for seed, and manufacturing *hulless oats,* was the main business of the partnership, as set forth in the articles of agreement. The articles of agreement also provide that the plan of the business for each succeeding year shall be determined by the stockholders; and, except to parties in interest with the company, the rules, regulations, contracts, and affairs, of whatever kind or nature, of the partnership, are to be kept a profound secret. Under these conditions, those dealing with the partnership, through its general agent and sub-agents appointed by him, could only have knowledge of the scope of the partnership by what it allowed the general agent to do in fact. The evidence tended to show that the partnership in its name, and through its general agent, did deal in common oats, and manufacture at its mill oat meal

therefrom. The plaintiff, when he sold the oats, which are the subject matter of the suit, did not know, and had no means of knowing, that the purchase of common oats was not within the scope of the partnership agreement. In fact, that agreement, by its terms, precluded him from ascertaining the scope of the partnership agreement. He could only judge of its scope from the business conducted in its name through its accredited general agent. But, it is contended, that it should have been shown that the excepting defendants knew of the transaction and assented to it. When they became members of a partnership, which placed the transaction of all its business in the hands of a general agent, with a provision that all its "affairs" were to be kept a profound secret, they thereby imposed upon themselves the duty to see to it that neither two thirds of the members authorized the transaction of any business outside the scope of the partnership, nor did the general agent transact any such business. The only means they furnished the plaintiff to judge of the scope of the business, was what they allowed the general agent in fact to do in the name of the partnership. The *onus* of proving what, by the articles of the partnership, he was precluded from knowing, cannot be cast upon the plaintiff. In regard to the plaintiff's knowledge, and means of knowledge, of the scope of the partnership business, the case is widely distinguishable from *Chapman* v. *Devereux*, 32 Vt. 616. Ostensibly, the partnership was dealing in common oats; and, not only, it did not furnish information, that this was without the scope of its business, but it actively withdrew all facilities of learning that it was, from the plaintiff. The County Court, on the evidence, could not do otherwise than submit the liability of the defendants, Gillett and Vinson, to the determination of the jury. As the charge is not furnished the presumption is that it was full and correct on this point also.

III. The deposition of the plaintiff, though referred to, and made a part of the exceptions, has not been furnished

to this court. No presumption arises that it contains any immaterial matter, or that if it does, it is of such a character as would be injurious to the defendants. If, as asserted by the defendants' counsel, in it, he relates a conversation with the sub-agent who purchased his oats, in regard to who were the partners and their financial responsibility, we do not think it was error to admit it. He had the right to testify to whom he gave credit in making the sale, and how he came to give such credit.

IV. The taking of the deposition of Jeremiah Smalley was within the spirit of Rule 21, Washington County Court. That rule is to the effect that, an *ex parte* deposition, taken without the State, must be taken at least fifteen days prior to the first day of the term at which it is to be used. The time for taking the deposition by the notice was August 30; and the time for holding the September Term of Washington County Court for that year, as appointed by law, was September 11. This was less than fifteen days. But before the notice was issued, it had been announced through the public press that the commencement of the term for actual business would begin September 18; and that the court, on convening, would be adjourned to September 18. This was done to enable the presiding judge, assigned to hold the court, to fulfil another official appointment. By this announcement, that term of court was in fact, and for all business purposes, to commence September 18, more than fifteen days subsequent to the time set for taking the deposition. The manifest object and purpose of the rule is to free parties and attorneys from the necessity of being absent from the State to take depositions, within less than fifteen days before they would be required to enter upon the active duties of the term of court, in which the deposition is to be used. Treating the term as in fact commencing September 18, the notice was within the spirit and requirements of the rule. But the taking of the deposition was adjourned to September 13. This was again within fifteen days of the

actual commencement of the term. But the defendants did not attend at the place appointed for taking the deposition on August 30. They were not, therefore, prejudiced by the adjournment. The magistrate had legal power to adjourn·the taking as he did. On these facts it is difficult, on the presumption that the deposition was material, to discover any error that has worked any injury to the defendants. But not having furnished the deposition, nor a copy, this court cannot presume that it was, in substance, injurious to what they claimed on the trial. Besides, the enforcement and relaxation of rules of court are within the sound judgment and discretion of the court making them. It is neither asserted in the exceptions, that the County Court did, nor did not, exercise its discretion, in admitting the deposition. It admitted it *pro forma.* The question is, was it error thus to admit it? Whatever may be held, in regard to its inhibition by the rule, to find error in its admission, it must be held that the County Court did not exercise its discretion in regard to the enforcement of the rule. It is a sufficient answer, that the exceptions do not assert that it did not exercise its discretion. Error must appear. The presumption is, there is no error, when from the statement in the exceptions, none appears affirmatively.

V. The remark of the court, in the charge to the jury, that the "depositions would be before them," was sufficient leave of the court to allow the depositions to go to the jury under the rule of the court in that behalf. These are all the points insisted upon by the defendants in this court.

Judgment affirmed.