·MARY H. WILLIS, ADM'X,

v.

JOSEPH H. CHAPMAN ET AL.

MAY TERM, 1896.

*Partnership. Joint stock company. Death or withdrawal
of member. Jurisdiction of Chancery to dissolve.
Corporation. Evidence.*

1. Several persons. associated themselves for the purpose
of carrying on the business of manufacturing cheese under
the name of the Smithtown Cheese Company. They
adopted a constitution which provided for a capital stock,
which was to be divided into shares. These shares could
be transferred upon certain conditions, and entitled the
holder to one vote each. The affairs of the company were
managed by a board of directors, who were annually elected
by the shareholders. After doing business in this way for
a time, a charter was procured incorporating the Smithtown
Cheese Factory Company, and the stockholders of the
Smithtown Cheese Company voted at a duly warned meet-
ing to accept the provisions of the charter. None of the
requisites prescribed for the organization of the Smithtown
Cheese Factory Company were complied with, but the
stockholders supposed that they had become a corporation
by accepting the charter, and from then business was
carried on in substantially the manner prescribed by both
the charter and the original constitution. *Held*, that the
original company was not changed into a corporation by
the vote accepting the charter.

2. The original association was a partnership in the nature of a
joint stock company.

3. The partnership would not be dissolved by the death or with-
drawal of a member, for the constitution provided for a
transfer of the shares.

4.  It might be dissolved for cause in the discretion of the court of chancery, and the fact that the concern had made no profit for twenty-three years, with no prospect of making any in the future, would be a sufficient cause.

5.  The original constitution provided that stockholders should receive twelve per cent on the par value of their stock. This was subsequently amended so as to make dividends payable upon the vote of the directors. The orator took his stock after this amendment, and no dividends had been voted. *Held*, that he was not entitled to dividends.

6.  The acts of an unincorporated association may be shown by parol, although a record is kept.

Bill in equity. Heard upon the pleadings and a master's report at the December term, 1895, Windsor county. ROWELL, Chancellor, dismissed the bill *pro forma*. The orator appeals.

*W. C. French* for the orator.

The record was the best evidence. *Adams* v. *Crowell*, 40 Vt. 31 ; *Cameron* v. *School Dist.*, 42 Vt. 507 ; *Eddy* v. *Wilson*, 43 Vt. 362.

A corporation cannot be formed by parties agreeing to be a corporation. *Hicks et al.* v. *Cram et al.*, 17 Vt. 456; *Carlton & Manning* v. *Ludlow W. Mill Co.*, 27 Vt. 496.

The partnership was dissolved by the death of orator's intestate. *Spear* v. *Newall*, 13 Vt. 288.

*J. C. Baker* for the defendant.

This company could not contract to pay interest on its shares. No dividends have been earned and the orator is entitled to none. 2 Thomp. Corp., ss. 1536, 2236, 2238; *Kohe* v. *Liliental*, 81 Cal. 378; *Railroad* v. *King*, 17 Ohio St. 534; *Cooledge* v. *Rosenthal*, 45 Ohio 183; *Chaffee* v. *Railroad*, 55 Vt. 126; *Richardson* v. *Railroad*, 44 Vt. 613.

The association was a corporation. If there was origin-

ally any formal defect in its formation, that is of no account in view of the long continued exercise of corporate functions.    4 Am. and Eng. Enc. of Law, 197, 198 ; *Allen* v. *Long*, 10 Texas 261 ; *Snider* v. *Troy*, 91. Ala. 224 ; *Hildreth* v. *McIntire*, 19 Am. Dec. 67, n. ; *Finnegan* v. *Noerenberg*, 52 Minn. 239.

THOMPSON, J.   In the fall of 1869, Oscar D. Young, and twelve other persons, formed an association under the name of the Smithtown Cheese Company for the purpose of manufacturing cheese in a factory.   As a part of the original agreement under which the association was formed, they adopted a constitution for their government in carrying on the business of the association.   This constitution, among other things, provided that the capital stock should be three thousand dollars, divided into sixty shares of fifty dollars each ; that the business of the company should be managed by a board of directors to be chosen by a majority of the voters present at the annual meeting to be held in January in each year ; that a stock book should be kept showing the number of shares of stock of each member, and all transfers thereof ; that any stockholder wishing to dispose of his stock should give at least six days' notice thereof to the clerk of the board of directors, and that in the sale of stock preference should be given to persons contributing milk to the factory ; that each stockholder should have one vote for each share of stock owned by him, and one additional vote for each five cows whose milk he had manufactured into cheese at the factory of the company, subject to the limitation that no member should cast more than twenty votes ; and that the constitution might be changed or amended at any time by two-thirds of all the votes which all the members of the company were entitled to cast at a meeting warned for that purpose, the notice for such meeting to

set forth the proposed change or amendment.  Article 4 of the constitution was as follows :

"The stockholders of the company shall receive twelve per cent per annum on all the stock actually paid in, and this shall be paid out of the general fund before dividing all the proceeds of the cheese for the season, meaning that the stockholders shall have twelve per cent per annum, free and clear of all expenses of repairs, taxes, insurance and other expenses."

Young subscribed for four shares of the stock and paid for the same at its par value, and each of his associates also subscribed and paid for stock at its par value, such subscription amounting in the aggregate to three thousand four hundred dollars.  Directors and other officers of the company appear to have been elected that fall, and in October, 1869, land was secured by the company upon which to erect its cheese factory, and such factory was erected thereon at an expense of seventeen hundred dollars, for labor, materials, and machines purchased, so that in the spring of 1870, the company commenced to do business.

In 1870, it was thought best by some of the stockholders to procure an act of incorporation under which to do business at said cheese factory, and accordingly Act No. 156, St. 1870, approved November 22, 1870, and to take effect from its passage, was procured to be enacted by the General Assembly, incorporating " *The Smithtown Cheese Factory Company.*"  The five persons named in the act as corporators, were then stockholders, and members of the board of directors and the treasurer, of the Smithtown Cheese Company, appointed at a meeting of that company held January 18, 1870.  Young was not one of the corporators named in the act.

At a meeting of the stockholders of the Smithtown Cheese Company, duly notified and held June 3, 1871, it was voted to adopt the act of incorporation, No. 156, St. 1870, and to so amend article 3 of the constitution, that the rate of interest to be paid on the capital stock should thereafter be deter-

mined by the directors of the company. Stockholders representing more than two-thirds of the stock, were present at this meeting and voted unanimously in favor of the action then taken. Young was not present and had no actual notice of this meeting, but soon after learned of the result of the vote then taken.

The act of incorporation provided that the first meeting of the corporation should be held at such time and place as the corporators therein named, or a majority of them might agree upon, and that notice thereof should be given to all the corporators at least six days prior to such meeting. The stock of the corporation was fixed by the act at not less than three thousand dollars and not more than ten thousand dollars, to be divided into shares as the corporation should direct. No stock was ever subscribed under the act. No meeting was ever called by the corporators or held by them to organize the corporation, nor was any action ever taken by any one in respect to the act of incorporation, except the vote of the Smithtown Cheese Company, passed June 3, 1871, as before stated. From and after this vote, the members of the Smithtown Cheese Company understood that they thereby became a corporation. The business has always been carried on under the original constitution and some slight amendments thereto, and the notices of the annual meetings since held, have been directed to the stockholders of the Smithtown Cheese Company.

July 5, 1871, after due notice, Young sold and transferred his four shares of stock to Joel H. Willis, the oratrix's intestate, and the transfer thereof was duly entered upon the stock book of the company, and Willis was recognized and accepted as a member thereof in the stead of Young. Some of the defendants are original stockholders and the rest are owners of stock purchased of former owners subsequent to January 1, 1875.

In January, 1872, eight per cent was paid the stockholders

on the par value of their stock.   In this payment, Young received $10.67, the same being eight per cent on his stock to the time of sale to Willis, and Willis received $7.61, being his share to December 1, 1871.   No payment of interest or dividends has since been made to the stockholders, and since then the directors have voted annually not to pay any interest or dividends on the stock.   The business has been so conducted that no profit has been made to the stockholders as such.   It is found that the business has been so run in good faith, and in order to successfully compete with other neighboring cheese factories.   All the stock is now owned by the individuals named as defendants, except the four shares owned by the oratrix's intestate, and four shares owned by the heirs of one Hitchcock, deceased.

The oratrix claims that the relation existing between her intestate and the defendants was that of partners, and that the partnership was dissolved by his death which occurred in April, 1892.   She prays for a settlement of the affairs of the partnership, the appointment of a receiver, the sale and distribution of the assets, and that before the distribution of the same among the stockholders, that she may be decreed the proportion that belongs to her intestate's estate, in consequence of no interest nor dividends having been paid on his stock, so as to be made equal with the defendants in respect to the business of the company.   She also prays for such further or other relief in the premises as the nature of the case may require.

The defendants insist that by the vote of June 3, 1871, the Smithtown Cheese Company was changed into a corporation, and that consequently the relation of partners never existed between them and Willis, and that a dissolution of the corporation cannot be decreed in this proceeding if cause therefor existed, because *scire facias* is the exclusive remedy by which a corporation can be dissolved.

The company was not changed into a corporation by that

vote.   No corporation was ever organized under the act of incorporation, and had there been, it would not have extinguished the Smithtown Cheese Company, nor deprived it of its property, nor affected the right of its stockholders therein.   No attempt has ever been made to convey its property to the so-called corporation, and no such conveyance could be made without the unanimous consent of all the stockholders.   Since the vote, the title to the property has remained in the stockholders of the company, and the business has been carried on just the same as it was before the vote. No organization has ever existed in respect to this business, except the original association, and the rights of the parties must be determined by the agreement under which it is was formed.   This agreement was expressed by the constitution adopted as the basis of the association.   The association was not in any sense a corporation.   It was a joint stock company, which is defined to be

"An association of individuals for the purpose of profit, possessing common capital, being divided into shares, of which each member possesses one or more, and which are transferable by the owner."   11 Am. & Eng. Ency. Law, 1036.

It was a partnership, but differed from an ordinary partnership in some respects.

"In an ordinary partnership, the death or withdrawal of a member works the dissolution of the firm.   In joint stock companies, however, the death or withdrawal of a member, or transfer of his interest, does not involve a dissolution of the company.   In such companies there is no *delectus personae.*"   Am. & Eng. Ency. Law, 1038.

The provisions of the constitution clearly show that it was the intention of the parties, that a transfer of stock or the death of a stockholder, should not work a dissolution of the company.   Consequently the death of Willis did not dissolve it.   *Tenney* v. *N. E. Protective Assn.*, 37 Vt. 64 ; *Walker* v. *Wait*, 50 Vt. 668 ; *McNeish* v. *Hulless Oat Co.*, 57 Vt.

31

316. The oratrix, therefore, is not entitled to have the company treated as dissolved by the death of her intestate.

It must now be considered whether she is entitled to a decree dissolving the company upon the facts stated. The court of equity has a wide discretion in the matter of decreeing the dissolution of a partnership, and the settlement of its affairs. It should seek to protect the rights and interests of all the partners, viewing the partnership in the light of its success or failure in respect to the purpose for which it was formed. It is apparent from article 3 of the constitution, that this company was formed for the purpose of realizing profits for its stockholders. It has been said that expectation of profit is implied in every partnership. Lindley Part. *576. For over twenty-three years this company has struggled for business against competing cheese factories, without having realized any profits for the stockholders during that time. The case does not disclose any better or different business outlook for it in the future. In effect, the defendants propose to continue the business indefinitely in the future, in the same manner and with the same probable results as in the past. Some of them, as patrons of the factory, are directly interested in having the business so continued, although they receive nothing as stockholders in the way of profit.

The hopelessness of a firm's success is recognized in equity as a sufficient ground for the dissolution of a partnership. Lind. Part. *576, *577; Story Part. (6th ed.) s. 290; 3 Kent. Com. (11th ed.) 68; *Baring* v. *Dix*, 1 Cox Ch. 213; *Reeve* v. *Parkin*, 2 Jac. & Walk. 390; 98 Am. Dec. 261, note; *Seighorlner* v. *Weissenborn*, 20 N. J. Eq. 172. This doctrine is applicable to the case at bar. The prospect for profit or equal benefit to all the stockholders is hopeless. On this ground, the oratrix is entitled to a decree dissolving the company, settling its affairs and distributing its assets.

The contention of the oratrix that she is entitled to receive

twelve per cent upon her intestate's stock from the time of the last dividend, out of the assets before distribution to the stockholders, is not sustained, nor is her claim that the master erred in admitting oral evidence to prove that the requisite number of shares were represented by the vote of June 3, 1871, to amend Article 3 of the constitution. The acts of unincorporated associations are provable by parol, though they keep a record. 6 Thomp. Corp. s. 7747; *Newell* v. *Borden,* 128 Mass. 31. This amendment was made before the oratrix's intestate became a stockholder. After this amendment, stockholders were only entitled to such dividends as were thereafter declared by the directors. Therefore it is not necessary to consider the effect of Art. 3 as originally adopted.

*The pro forma decree is reversed, and cause remanded with mandate that the court of chancery enter a decree dissolving the Smithtown Cheese Company with costs to the oratrix, and that a receiver be appointed and that such other proceedings be had as may be necessary to settle the affairs of said company and adjust matters between its stockholders, and that upon the payment of the just debts owing by said company and other proper charges, the residue of its assets, if any, be distributed among its stockholders in proportion to the number of shares of stock owned by each. The oratrix to recover her costs in this court.*